UNITED STATES *v.* TWO THOUSAND ONE HUNDRED AND SEVENTEEN BUSHELS OF MALT.

*(District Court, E. D. Wisconsin.   June 22, 1881.)*

1. IMPORT DUTIES—FRAUDULENT INVOICES—REV. ST. § 2854.

In a proceeding, by information, to obtain judgment of condemnation against certain imports as forfeited for alleged violations of certain provisions of the statute regulating importations from foreign countries, *held,* that, as the invoice contained a discount that was not allowed the purchaser, under the provisions of section 2854 of the Revised Statutes, the property was forfeit.

2. SAME—SAME.

The fact that the property, *i. e.,* malt, was invoiced, for purposes of importation, at the rate and upon the scale of 36 pounds to the bushel, that being the scale upon which it was sold in the country from which it was imported, under an arrangement to sell the same in this country upon a scale of 34 pounds to the bushel, that being the scale usually adopted here, does not constitute a ground of forfeiture.

3. SAME—REV. ST. § 2907.

Where the railroad company, owing to competition, hauled the malt in question from the malt-house, the place of its manufacture and where it was stored when delivered to such railroad company for transportation, to the cars at the station, free of charge, no forfeiture ensues under section 2907 of the Revised Statutes for not adding the expense usually incurred for such services, as there has been none incurred to add.

4. REV. ST. § 2864.

The invoice required by section 2864 of the Revised Statutes is false within the meaning of the statute if untrue, simply. The existence or non-existence of a fraudulent intent is immaterial.

5. DUTIES—CUSTOMS OFFICERS.

Fraudulent practices in connection with the customs duties are not legalized by being treated as legal and regular by customs officers.

*G. W. Hazelton,* for the United States.

*Murphy & Goodwin,* for claimant.

DYER, D. J. This is a proceeding by information against a quantity of malt sold and consigned by the claimant, who resides at London, in Canada West, to the Schlitz Brewing Company, of Milwaukee, the object of which proceeding is to obtain judgment of condemnation against the property as forfeited for alleged violations, by the claimant, of certain provisions of the statute regulating importations from foreign countries. The shipment was made in August, 1880. The malt was sold for one dollar per bushel, delivered in Milwaukee. It was originally imported into the port of Port Huron, and was there entered for warehouse and transportation, and transported thence in bond by rail to Milwaukee, where it was entered for rewarehousing and withdrawal for consumption by the brewing company. Seizure was made at the port of delivery. The grounds of seizure, as stated in the seizing officer's report, were that the invoice of the malt contained an illegal discount not allowed to the purchaser, and that the property was consigned at an undervaluation. After the seizure an appraisement was made, pursuant to law, by special appraisers, who appraised the malt at $1.05 per bushel, home value. In the invoice the property is described as 2,000 bushels of No. 2 malt, purchased in London at a cost of 80 cents per bushel, on a scale of 36 pounds to the bushel. The total cost is stated to be $1,600, and on the face of the invoice there is a deduction of $2\frac{1}{2}$ per cent., amounting to $40, for dust, leaving a balance of $1,560 as actual cost in Canada. In the entry for warehouse and transportation, the property is described as 2,000 bushels, at an invoice value of $1,560, added to which is $2\frac{1}{2}$ per cent. commission, $39, making the dutiable value $1,599, and the duty, 20 per centum *ad valorem,* $319.80. On shipment a bill of the malt was sent by the claimant to the purchaser, of the following tenor:

August 19, 1880, to 72,000 pounds malt, @ one dollar per 34 pounds, delivered on track, Milwaukee, - - - - $2,117.65

Another bill, indorsed "Copy Consul Certificate," was at the same time forwarded to the purchaser, as follows:

| | |
|---|---|
| August 19, 1880. To 72,000 pounds or 2,000 bushels malt, @ 80 cents, | $1,600 |
| Less 2½ off for dust, | 40 |
| Value at London | $1,560 |

Several grounds of forfeiture are alleged in the information.

1. It is charged, *first*, that the consignor of the malt, Slater, knowingly made an entry thereof at and through the port of Milwaukee by means of a false invoice, in that the malt, being subject to an *ad valorem* duty of 20 per cent., was invoiced, for purposes of importation, at the rate and upon the scale of 36 pounds to the bushel, under an arrangement to sell the same at the price of $1.00 per bushel of 34 pounds; the claimant thereby entering the malt upon an invoice for importation upon the scale of 36 pounds to the bushel, and at the same time making an entry of the same in his account with the brewing company, and forwarding a bill therefor upon the scale of 34 pounds to the bushel, and thereby defrauding the United States out of the legal import duty on a portion of said merchandise.

Inasmuch as it is shown that in the general trade malt is sold and purchased in Canada upon a scale of 36 pounds to the bushel, and in the United States upon a scale of 34 pounds to the bushel, there is nothing in the first-alleged ground of forfeiture, and it was understood to be abandoned at the argument.

2. It is further charged in the information that the malt was fraudulently entered and invoiced by the claimant, for the purpose of importation, at 10 cents a bushel, or thereabouts, less than its actual market value in the principal markets of Canada. The statute (section 2907, Rev. St.) makes the cost of merchandise or its actual wholesale price or general market value, at the time of exportation, in the principal markets of the country from which it has been imported into the United States, with certain specified additions, the basis for determining the dutiable value. Considerable testimony has been taken to show the market value of malt of the quality of that in controversy in various markets of Canada. Witnesses for the United States have testified that in their opinion such malt was worth in Canada, in August, 1880, from 85 cents to $1.00 per bushel, upon the scale of 36 pounds to the bushel. Witnesses for the claimant have testified that the fair market value of No. 2 malt in Canada, at

the time specified, was from 75 to 80 cents per bushel of 36 pounds each. The witnesses for the government testified upon inspection of samples exhibited to them in limited quantities, and the testimony of some of them indicates that the quality of portions of the malt was impaired by defective malting. There is a serious conflict in the evidence on the question of value, and on consideration of the proofs on both sides I cannot say that the government has established its case upon this branch of it by the weight of the evidence. The second alleged ground of forfeiture is therefore held unproven. This ruling with reference to undervaluation is not intended in this connection to cover the question of deduction for dust, which will be separately considered as a distinct ground upon which a right of forfeiture is insisted upon.

3. The malt in question was in store at the malt-house of the claimant when it was delivered to the railroad company for shipment from London. The malt-house was situated some distance from the railroad station, and the malt had to be hauled in wagons to the cars at the station; and it is claimed that the expense of removing the malt from the place of manufacture to the cars was not added to its market value, so as to make that expense part of the dutiable value, and that therefore the property is forfeitable.

Section 2907 of the Revised Statutes provides that—

"In determining the dutiable value of merchandise there shall be added to the cost, or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country from whence the same has been imported into the United States, the cost of transportation, shipment, and transhipment, with all the expenses included, from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States."

This plainly means that whatever expense the shipper pays or incurs in the removal of the merchandise or property from the place of production or manufacture to the place where shipment is made, shall be included in the dutiable value.

The facts upon this branch of the case, as proven, are that at the time this malt was shipped the rates of freight on the Grand Trunk road for this class of merchandise, from London to Milwaukee, were from 20 to 25 cents per 100 pounds. Because of competition, the railway company, with its own teams and wagons, takes freight of this character at the place where it may be and removes it to cars without additional charge.

In this case the company contracted to carry the malt to Mil-

waukee for 20 cents per 100 pounds, its lowest rate, and took the freight by its own conveyances from the malt-house to the cars, making no extra charge for the extra service.

The freight agent of the road testifies that the malt was removed from the place of manufacture to the cars at the expense of the railroad company, and that at London and several other competing points in Canada the prescribed rates of freight for the entire transportation include the expense of removal of merchandise from the place where it may be at the time to the railroad station. In other words, in the case in hand the claimant would have had to pay the same rate for transportation of this malt from London to Milwaukee, if he had himself delivered it at the depot in London, as he in fact contracted to pay; the railroad company assuming the removal of the malt from the malt-house to the cars. The transaction on the part of the railroad company, then, was equivalent to the removal of the malt without expense to the shipper. As, therefore, the transportation or removal of the malt from the malt-house to the cars cost the shipper nothing, there was nothing to be added as expense of such removal to the dutiable value. I hold, therefore, that the third alleged ground of forfeiture is unsustained.

4. The more serious question in the case is that which is involved in the deduction which the claimant made on the invoice of the malt furnished to the consular agent at the time of shipment, of $2\frac{1}{2}$ per cent. for dust. After providing that all invoices of imported merchandise shall be made in triplicate and signed by the person owning or shipping the merchandise, the statute (section 2854, Rev. St.) declares that—

"All such invoices shall, at or before the shipment of the merchandise, be produced to the consul, vice-consul, or commercial agent of the United States nearest the place of shipment, for the use of the United States, and shall have indorsed thereon, when so produced, a declaration signed by the purchaser, manufacturer, owner, or agent, setting forth that the invoice is in all respects true; that it contains, if the merchandise mentioned therein is subject to *ad valorem* duty, and was obtained by purchase, a true and full statement of the time when and the place where the same was purchased, and the actual cost thereof, and of all charges thereon; and that no discounts, bounties, or drawbacks are contained in the invoice, but such as have actually been allowed thereon."

It is insisted by the attorney for the government that under this statute no discount or drawback could be lawfully made or inserted in the claimant's invoice in this case, unless it was one allowed to the purchaser of the malt; and the prosecution of the case, upon this

branch of it, is made to rest upon section 2864 of the Revised Statutes, which provides that—

"If any owner, consignee, or agent of any merchandise shall knowingly make, or attempt to make, an entry thereof by means of any false invoice, or false certificate of a consul, vice-consul, or commercial agent, or of any invoice which does not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, such merchandise, or the value thereof, shall be forfeited."

And it is argued that the violation of this statute does not necessarily involve moral turpitude or actual intentional fraud.

On the contrary, counsel for the claimant contends that there can be no forfeiture unless there was actual fraud, and he cites as the section of the statute under which this prosecution must proceed, if at all, section 2839 of the Revised Statutes, which provides that—

"If any merchandise of which entry has been made in the office of a collector is not invoiced according to the actual cost thereof at the place of exportation, with design to evade payment of duty, all such merchandise, or the value thereof, to be recovered of the person making entry, shall be forfeited."

Upon careful consideration of the provisions of section 2854, I am constrained to construe it, in its applicaiion to this case, as meaning that the invoice could contain no discounts or drawbacks but such as were actually allowed to the purchaser of the property in his transaction with the seller, or as were expressly allowed by law. No other construction seems consistent with the purpose of the entire statute on the subject, which necessarily is very stringent in all its details. This section cannot mean a discount or drawback allowed only by the owner or importer of the property, because that would throw the door open for any discounts or drawbacks, however illegitimate, which he alone might from self-interest, or for any other cause, see fit to insert in the invoice. Nor do I think it is intended by this section to give to the consular agent or to the collector of a port the power to allow any drawback or discount irrespective of statutory permission. The construction which I place upon the statute appears to be a reasonable one; for if, for example, in the purchase of such an article as malt, the parties, in good faith, agree that a certain price should be paid for it by the purchaser, less a certain percentage to be deducted for dust, and the purchaser thus has the benefit of the deduction, the discount or drawback is one that enters into the transaction as a matter of mutual interest to the parties, and may well be recognized as such in the invoice that is produced to the consular agent. Then, if, apart from any agreement between the shipper

and the purchaser, the deduction be one authorized by law, the shipper or importer would, of course, be entitled to it on the face of his invoice.

I conclude, therefore, as already stated, that the discount or drawback must be one actually allowed to the purchaser, or absolutely authorized by law. In this case it was neither. It was not allowed to the Schlitz Brewing Company; for not only does the bill rendered to it by the claimant show that the purchaser was charged for the malt at the contract price, namely, one dollar per bushel, but the oral testimony shows that there was no deduction made or to be made for dust in the amount which the brewing company was to pay. The parties did not contract with reference to any such deduction. Looking next for statutory authority to make the deduction, without reference to the contract of the parties, it is found to be wanting. Some of the testimony tends to show that in London malt is sold at a certain price, less a certain per centage for dust. Other testimony tends to show that in other localities in Canada no such discount is made. Taking the proofs as a whole, I am of opinion that no established custom or usage is shown, but that it must be regarded as purely matter of contract between sellers and purchasers as each transaction arises. In this case, therefore, I think it can hardly be claimed that the question of deduction for dust entered into the value of the malt so as to make its general market value, at the time of exportation in the principal markets of Canada, 80 cents per bushel, less 2½ per cent. for dust, and thereby sanction the discount as an element entering into the fact of market value, and therefore authorized by law.

But it appears as a fact in the case that this deduction was not objected to, but on the contrary appears to have been tacitly sanctioned by the consular agent at London and the collector of the port at Port Huron; and the testimony shows that at the latter port, and at other points of entry on the frontier, the claimant had previously made various shipments of malt under invoices containing the same deduction for dust, which were passed without objection; and it is contended, not without a good deal of force, that since the practice has been recognized and treated as regular by the customs officers with whom the claimant has previously dealt, the present proceeding to enforce a forfeiture of his property, on the ground that the deduction is one not authorized by law, does not accord with justice and legal right. If the court were at liberty to deal with the case in the light of what appear to be equitable considerations, such as that just

suggested, the argument based upon a previous course of practice would certainly be entitled to weight. But the court is compelled to administer the law in the strictness of its letter and true meaning, and it often happens that in cases of this character equitable considerations, which might induce an officer having the freedom of discretion to grant relief, must be disregarded by the court. If the deduction of $2\frac{1}{2}$ per cent. in the invoice in this case was illegal, the court must so declare it, and any previous recognition of it by customs officers cannot make it legal. The government is not bound by any unauthorized action of its officers; and when the court is called upon to determine the validity of a proceeding, such as that in question here, the only test is, is the act complained of legal? If it is not, then no recognition or sanction of it by subordinate officers can legalize it. Moreover, it may be the fact that the invoice in this case was passed without objection, because the consular agent and the collector supposed that the deduction for dust was one allowed to the consignee of the malt.

But it is still insisted that there was no design on the part of the claimant to evade the payment of duty—no intent to defraud the government; and therefore that his property is not liable to forfeiture. It is true that section 2839 appears to make such design or intent a prerequisite to the right of forfeiture. But the case covered by that section is one where the property is not invoiced according to the actual cost thereof at 'the place of exportation, and that is not quite the question here involved. The question here is one that touches the importer's right to make a deduction in the invoice from the cost or market value of the property, after such cost or market value has been truly stated in the invoice; and I regard the case as falling rather within section 2864, and particularly within that part of the section which declares that—

" If any owner, consignee, or agent of any merchandise shall knowingly make  *  *  *  an entry thereof by means of  *  *  *  any invoice which does not contain a true statement of all the particulars hereinbefore required,  *  *  *  such merchandise  *  *  *  shall be forfeited."

Among the particulars before required is the one relating to drawbacks and discounts, as provided by section 2854, and so the question would be did the claimant knowingly make an entry of this malt by means of an invoice which did not contain a true statement of all the particulars or facts required by law. It is true that section 2864 provides for the case of an entry by means of a false invoice, or false certificate of a consul; but it is not, as I understand, so limited in its

scope as not to cover an act which is in fact illegal, though there be no premeditated attempt to perpetrate a fraud by means of an invoice false in the sense that it is designedly fraudulent.

The customs laws throughout are necessarily exceedingly stringent, and in more than one instance they forbid the commission of acts which, if committed, though simply *mala prohibita*, involve a forfeiture; and section 2864 seems to embrace the case of an entry knowingly made by means of *any* invoice which does not contain a true statement of all the particulars required by law.

On the whole, my conclusion is that the law was violated in making the deduction of $2\frac{1}{2}$ per cent. for dust from the cost or value of the malt, and that therefore the property was subject to forfeiture. I may add that this conclusion is not expressed without some hesitation, since the duty on the amount of the deduction for dust would be quite trifling in amount, and since the right of forfeiture on the part of the government seems to rest rather upon technical grounds than otherwise; and I do not fail to appreciate the fact that the consequences to the claimant are serious. But after considering with care the question upon which the case must turn, I have been unable to perceive any way of escape from the result stated, consistent with the letter, spirit, and meaning of the statute regulating the collection of duties upon imports.